Argued October 14, affirmed December 9, 1953

# FENTON ET AL. *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

264 P. 2d 1037

*Carl M. Felker,* of Roseburg, argued the cause and filed briefs for appellants.

*Ray H. Lafky,* Assistant Attorney General, of Salem, argued the cause for respondent. With him on the brief were Robert Y. Thornton, Attorney General, Roy K. Terry and Vernon D. Gleaves, of Salem, and T. Walter Gillard, of Portland, Assistant Attorneys General.

Before Latourette, Chief Justice, and Warner, Tooze and Perry, Justices.

WARNER, J.

This is an action by the widow and four children of Elmer J. Fenton, deceased, against the State Industrial

Accident Commission of the state of Oregon to recover death benefits under the Oregon Workmen's Compensation Law. From an order of involuntary nonsuit, the plaintiffs appeal.

The ruling of the court turned upon a holding that the following instrument evidenced the existence of a joint venture or partnership. The agreement reads:

"9-18-49

"(1) 2 mo. or more

"(2) Fenton furnish own gas-oil ½ of repairs bits to sharpen ½ of well drill repairs

"(3) I John T. Beck to furnish as many wells as possible and collect for wells and pay you your part, due when the footage is drilled, allso ½ of all debts to be shared by each one, and divided as comes in.

"Machine is to be run carefull and not damage motors or equipment,

"(4) I John T. Beck will help what I can and will give $40/100—2/5.

"My required time will just be to find wells and collect funds and order supplies such as casing.

"I Beck reserve the use of the welder and torch,

"Prices for drilling according as competition and country permits—in case of selling machine I shall pay Fenton the amt. of $75.00 bonus to survive him to get another job.
"Worker agrees to this

/s/ E. B. Fenton      /s/ John T. Beck

Owner"

It is plaintiffs' contention that the above agreement bespeaks the relationship of employer and employee rather than the one which the court adopts as the

foundation for its adverse order. The defendant Commission argues to the contrary and in support of the action of the circuit court.

■ Only one serious question is presented for solution: Was the writing executed by Beck and Fenton one of partnership or joint venture or was it one of employment? If the former, the lower court must be affirmed; but if the latter, i.e., an agreement wherein Fenton was engaged to furnish his services subject to Beck's direction and right to control the manner and method he should employ in accomplishing a given result, then the judgment must be reversed. *Butts v. State Ind. Acc. Comm.*, 193 Or 417, 427, 239 P2d 238; *Bowser v. State Indus. Accident Comm.*, 182 Or 42, 49, 185 P2d 891; § 102-1703, OCLA.

It appears that Fenton had been in the well drilling business for a year or two prior to his death, although shortly before that event he had been working in the woods of southwestern Oregon as a logger. Mr. Beck, the other party to the enterprise, had owned and operated well drilling rigs for several years prior to the date of that writing and had known Fenton for about five years before their conference in Sutherlin, Oregon, late in the afternoon of September 18, 1949. Beck at that time had quite a few drilling orders ahead but, contemplating a trip to Idaho, he solicited Fenton to work with Beck's outfit during his absence. The precise nature of the offer is reflected by the agreement drawn by Beck before going to the Fenton home late that same evening. Beck arrived after the Fenton family had retired, and the two again discussed the proposition advanced earlier that day. This terminated in the execution of the agreement prepared by Beck. The next day Fenton, acting pursuant thereto, started to drill a new well on property south of Sutherlin.

While he was so engaged, a part of the drilling rig came in contact with a nearby high power line, causing Fenton's death by electrocution.

The plaintiffs are content to rest their attack on the concept of partnership or joint venture solely upon two propositions, first, that the agreement did not confer on Fenton the right to dispose of all the partnership assets and, second, that it created no community of interest in the profits.

■ Their first contention is premised upon that part of the agreement reading, "in case of selling machine I shall pay Fenton the amt. of $75.00 bonus to survive him to get another job." Relying on *Gong v. Toy*, 85 Or 209, 166 P 50, as authority for their position, plaintiffs argue that unless each partner has the right to manage the whole business and to dispose of the entire property involved in the enterprise for its purposes in the same manner and with the same power as all can when acting together, no partnership subsists between the contracting parties. *Gong v. Toy*, supra, at page 212. The weakness of this argument is that it ignores the fact that all property employed in a given partnership enterprise is not necessarily owned by the partnership and that the title to all or a part so used may repose in one or more of the copartners as individuals, subject to the right of use only in the partnership. Such an arrangement is not a novel one in joint venture operations.

In *Hackett v. Multnomah Ry. Co.*, 12 Or 124, 130, 6 P 659, 53 Am Rep 327, this court, speaking through Mr. Justice LORD, said:

> "* * * There may be a partnership in the profits of a business, although one party is the sole owner of the goods and the other the sole manager of them. The capital may consist in the mere use

of the property owned by the individual partners separately. \* \* \*''

The doctrine announced in the Hackett case is one of general acceptance. 40 Am Jur 154, Partnership § 40; 68 CJS 424, Partnership § 16.

Beck's well drilling outfit never became an item of partnership capital, nor was it necessary that it should. Such capital value as accrued to the partners therefrom was the partnership's right to use the same. There was nothing in their agreement in inhibit Fenton from disposing of this use right if, in fact, it had a market value.

The second proposition advanced by appellants to defeat the construction of the writing as a partnership association must also fail. In support of this contention the plaintiffs urge that the provision of the agreement conferring on Beck the duty to collect the bills for work done pursuant thereto, pay therefrom the indebtedness of their operations and thereafter distribute the net earnings between the parties ''indicates only a method of computation of the payment of wages to Mr. Fenton for work performed.'' We cannot agree with this when the provision referred to is read with the entire contract.

Under this clause the function of Beck merely proximates that of a treasurer of an association or corporation. It confers on him no ownership in the funds collected. He is no more than a temporary custodian of the avails of the enterprise for the benefit of both parties, i.e., Fenton and himself. It does not negative the existence of a partner relationship between them or the presence of a community of interest in the profits. To the contrary, in our opinion it emphasizes the intent of Beck and Fenton to create such a relationship. Pro-

visions of this character are not unusual to agreements creating partnerships or joint ventures, as is indicated by what we have lately said in *Claude v. Claude,* 191 Or 308, 324, 228 P2d 776, 230 P2d 211:

> "The definition of 'community of interest' does not inhibit partners from including in the articles of partnership restrictions on their authority as agents of the firm. 40 Am. Jur., Partnership, 229, § 141. The character of the business, the relative experience or training of the parties, and considerations of efficient management frequently dictate the wisdom of a division of administrative authority and responsibility between the partners in order to better effectuate the objectives of the joint enterprise. Where other elements necessary to establish a partnership are present, it is not necessary that there should be joint control or that the rights of the parties to the control of the business should be equal. Commissioner of Internal Revenue v. Olds, 60 F.2d 252, 254, 15 B.T.A. 560; Lyon v. MacQuarrie, 46 Cal. App.2d 119, 115 P.2d 594; Davidson v. Shaffer, 153 Kan. 661, 113 P.2d 90; Fenwick v. Unemployment Compensation Commission, supra, [38 A2d 8949]. Nor does the fact that one of the parties to the agreement is made manager of the enterprise destroy the concept of 'community of interest' or prevent the status of the partnership from existing. Hardymon v. Glenn, 56 F. Supp. 269, 274; McAlpine v. Millen, 104 Minn. 289, 116 N.W. 583; McEvoy v. Grant, 302 Pa. 539, 153 A. 763."

■ During the course of the oral argument, plaintiffs' counsel stressed the use of the word "worker" as it appears above the signature of Mr. Fenton and the word "owner" as it is written under the signature of Mr. Beck as a significant indication of an employer-employee relationship. We do not think these words give support to such a conclusion. Beck, as owner of the drilling outfit, was contributing the use of this

machine as a partnership asset, and Fenton was contributing his services as the one to work with the machine when in use. Although the descriptions which the parties used were unnecessary, they do properly indicate their true relationship to the enterprise and neither subtract nor add to the substance of the agreement. Moreover, their relationship is established by the contract taken in its entirety and not by the titles they append to their signatures.

■ Although we have hereinabove used ''partnership'' and ''joint venture'' interchangeably, we are of the opinion that it would be more accurate to define the Beck-Fenton agreement as one of joint venture in which certain functions of a managerial character were reserved to Beck and the actual work of well drilling left to Fenton without the control or direction of the former.

■ Plaintiffs also assign as error the ruling of the court sustaining objections to two questions propounded to Beck as their witness and to which offers of proof were made. An examination of the questions asked indicates that they solicited testimony which would, in effect, vary the terms of the written instrument rather than explain provisions alleged to have been ambiguous but which were not, in fact, of that status. The offers of proof made give justification to this thought and further reveal that the answers, if made, would have been only the conclusions of the witness. This assignment was without merit.

The judgment is affirmed.