LAIRD, *Appellant,*

*v.*

JOHNS, *Respondent.*

(No. E 18,978, SC P-2467)

JOHNS et al, *Respondents,*

*v.*

LAIRD, *Appellant.*

(No. E 19,038, SC P-2467)

557 P2d 670

*Cleveland C. Cory* and *George H. Fraser,* of Davies, Biggs, Strayer, Stoel and Boley, Portland, argued the cause and filed briefs for appellant.

*John U. Grove,* of Monahan & Grove, Milton-Freewater, argued the cause and filed briefs for respondents.

Before Denecke, Chief Justice, and O'Connell, Holman, Tongue, Howell and Bryson, Justices.

Affirmed.

## PER CURIAM.

These two suits in equity, which were consolidated for trial and appeal, seek an accounting of the business relationship between Robert Laird and W. R. Johns or the partnership of Johns, Smith & Beamer (JSB). The dispute between Laird and the partnership, which was represented by Johns, arises from a business arrangement to custom feed cattle and to conduct a cow-calf operation from about May 1, 1973 to May 1, 1974. JSB contends that the parties were engaged in a joint venture in both operations and that Laird is obligated to share one-half of the resulting overall losses. Laird contends that the joint venture arrangement applied only to the custom feeding business and that, while he had an arrangement to share profits from the cow-calf operation, he was essentially an employee and was not to share in any losses. The trial court found that the joint venture arrangement included both the custom feeding business and the cow-calf operation, and that the agreement required an equal division of any losses as well as profits on each operation. Laird appeals, and we affirm.

Whether a joint venture existed depends upon the intention and conduct of the parties. *Hayes v. Killinger,* 235 Or 465, 385 P2d 747 (1963). Elements to be considered are sharing of the profits and losses and the right to exert some control over the operation. 235 Or at 477-78. Absent an agreement to the contrary, the obligation to share losses will be implied. *See, e.g., Dean Vincent, Inc. v. Russell's Realty,* 268 Or 456, 465, 521 P2d 334 (1974); *Eldridge et al v. Johnston,* 195 Or 379, 394, 245 P2d 239 (1952).

While we review the record de novo, the findings of the trial judge are entitled to substantial weight, particularly where the facts are in dispute and the credibility of the witnesses is an important factor. *Wilkinson v. Carpenter,* 276 Or 311, 314, 554 P2d 512 (1976); *Adamson v. Adamson,* 273 Or 382, 541 P2d 460 (1975).

We have read the transcript and examined the exhibits. We agree with the following observation made by the trial court:

> "The testimony and evidence presented was replete with ambiguous documents; inconsistent statements; contradictory testimony by the same witness as well as contradiction by witnesses called by the same party; changes of theory and contentions as set forth in the Pretrial Order, depositions, testimony and statements of counsel at closing argument * * *."

Under these circumstances, the basic issue is one of credibility, and, therefore, it would be of no assistance to the bar to delineate all the disputed details of the arrangement between the parties. However, many of the essential facts were agreed upon in the pretrial order, and we will summarize them here.

■ Both Johns, who represented JSB, and Laird were experienced cattle ranchers. Laird controlled pasture land in the Troutdale area, and JSB owned ranch land in the Athena area which had been operated as a cow-calf operation. In May, 1973, the parties signed a memorandum which stated that they were forming a joint venture to run a cattle operation with an "equal split."[1] Laird was to be "responsible for the business end." Laird was also to provide the feed from his Troutdale property, and JSB was to do the same in the Athena area. JSB provided the financing. Subsequently, cattle were pastured on both properties. Because of severe winter conditions and a sharp decline in cattle prices, the cow-calf operation was unprofitable.

■ Laird conceded that the pasturing end of the business involved a joint venture. However, he argued that the cow-calf operation was not a joint venture. Laird's initial theory was that under their agreement he was

---

[1] The agreement was apparently executed as a preliminary memorial of the material elements of the business relationship. Although a more formal contract was originally intended to be executed later, the parties neglected to have one drawn up. The preliminary agreement, however, is sufficient to show that a joint venture was established.

to oversee the cow herd, and any profits were to be divided on a 50-50 basis between himself and JSB, and he was merely an employee and was not to be responsible for any losses. During the trial, however, Laird switched his position and contended that he was to receive only 25% of any profits.

There was also evidence that Laird participated in the buying and selling decisions, that he made decisions as to which cattle would go to the feed lot or to the cow operation, and that he exercised his authority to reject the purchase of certain cattle to go into the cow-calf venture.

On the other hand, there was evidence that Laird refused to sign a credit agreement for the cattle which would have made him jointly liable to the financing institution in event of a default; no bank accounts were opened in the joint names of Laird and JSB; no separate tax returns were filed for the cow-calf operation; and the losses from that operation were reflected in the JSB partnership return.

It is clear from the memorandum opinion that the trial court simply did not believe much of Laird's testimony and resolved the conflicts in the evidence against him. In light of the many inconsistencies and contradictions contained in Laird's testimony, we believe that that decision was correct, and we conclude that Laird and JSB had a joint venture not only on the custom pasturing operation but also on the cow-calf venture, and that the profits and losses from both were to be shared equally.[2]

Affirmed. No costs to either party.

---

[2]The parties have agreed that a complete accounting of the profits and losses from both operations would be postponed until this appeal was decided. At the hearing on such accounting, both parties, we assume, will be entitled to enter objections and have them determined by the trial court.