Argued and submitted September 21, affirmed March 8, 1982

POTTER et al,
*Respondents,*
*v.*
HATTER FARMS, INC.,
*Appellant.*

(No. 118,337, CA A20256)

641 P2d 628

Paul R. Romain, Portland, argued the cause for appellant. With him on the briefs were Marva Graham and Ragen, Roberts, O'Scannlain, Robertson & Neill, Portland.

Philip J. Hand, Woodburn, argued the cause for respondents. With him on the brief was Klein & Hand, Woodburn.

Before Gillette, Presiding Judge, and Young, Judge, and Roberts, Judge Pro Tempore.

GILLETTE, P. J.

256

## GILLETTE, P. J.

In this oral contract action, defendant appeals from a jury verdict in favor of plaintiffs (Potters). Defendant argues that: there was no substantial evidence that a contract existed between it and Potters; even if an oral agreement was reached, it was unenforceable because it violated the Uniform Commercial Code (UCC) Statute of Frauds; and plaintiffs were not entitled to raise promissory estoppel as a bar to their Statute of Frauds defense. We affirm.

Plaintiffs operate a turkey hatchery in Oregon. The hatchery processes turkey eggs through incubation to hatching, at which time new turkey "poults" are sold to growers. Defendant is a turkey grower in Oklahoma; it raises turkeys and sells them to food processing companies.

The arrangement between the parties began with a telephone call. Plaintiff Charles Potter testified that Gil Kent, production manager of Hatter Farms, first contacted him by phone in November or December, 1978, and stated an interest in purchasing some poults from the Potters' company. The men then met in January, 1979, at the Tulsa, Oklahoma, airport. At that time, according to Potter, he and Kent entered into an oral contract. Potter testified that he agreed to sell and Kent agreed that Hatter Farms would buy 192,000 poults for eighty cents per poult, plus charges for egg dipping, inspections and toe clipping.

The men also discussed transportation of the poults during the January meeting, but the exact means of transportation was left undecided. They agreed at that time that, because poults are neither fed nor watered in transit, transportation from Oregon to Oklahoma should take no longer than 40 hours. Potter testified, however, that the 40-hour figure was merely a goal set by the parties and that the agreement was not contingent upon finding transportation to attain that goal. In essence, Potter testified that he and Kent reached an oral contract for sale of the poults with the exact method of transportation left to be decided later. The parties agreed, according to Potter, to find transportation that was as quick and inexpensive as possible. Potter stated that, aside from the open transportation

term, there was no disagreement whatsoever as to the terms of the contract.

Subsequent to their January discussion, both parties investigated transportation possibilities. One was to fly the poults to Chicago and truck them from there to Oklahoma. Robert Hatter, the president of defendant corporation, claimed at trial that such a method of transportation was not practical. He admitted, however, that it was possible to transport the poults in that manner. Potter testified that the cost of trucking the poults from Chicago to Oklahoma was too high, but that it was "not totally out of reason," because the alleged agreement occurred during the off-season when demand for turkey poults was high and supply was low. William Lewis, who had 30 years experience buying and selling turkey poults, testified that the estimated cost of the poults, including transportation, was "not too exorbitant" for poults during the off-season.

Potter met with defendant's representatives again in June, 1979. He had been contacted by two customers in California who expressed interest in buying the poults involved in this case, and the purpose of the June meeting was to determine if Hatter Farms still needed the poults. He explained:

"My purpose in selling turkeys is to protect our customer to the utmost, and in order to do that I make very solid commitments, and the people in California understood when the poults were going and that I had been back there and they had been confirmed and sold in January, and I told them I would go back and see if there was any problem with them taking them, or if they needed them, and I got no indication that they didn't need them."

Gil Kent testified that he told Potter that it was unwise for Potter to hold the poults for defendant, because neither party had arranged a suitable means of transportation. Potter testified, however, that he was certain at the end of the meeting that defenddant still intended to buy the poults from him and that there were no contractual terms left to be worked out. Potter subsequently turned down an offer from the California buyer to buy the poults.

In August, 1979, Gil Kent informed Potter that defendant would be unable to use the poults. This action followed.

Defendant first claims that no contract for the sale of poults existed. It argues that transportation was so essential an element of any such contract that failure to agree on it indicates a lack of intent to contract. Alternatively, it argues that, even if a contract existed, it was conditioned upon the occurrence of and agreement upon transportation, which never occurred.

■ ■ We cannot overturn the jury's decision on the basis of insufficient evidence unless there was no evidence to support the verdict. *Allison v. Shepherd,* 285 Or 447, 454, 591 P2d 735 (1979). There was evidence here, based on Potter's testimony, that he and defendant's representatives entered into an oral contract. The fact that the transportation term was left open is not fatal to the agreement, because Potter testified that the agreement was not conditioned upon finding ideal transportation. The cost of the poults shipped by the unmore terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."[1]

"(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy."[1]

We hold that there is sufficient evidence that the requirements of this statute were fulfilled.

Defendant next argues that the trial court erred by not granting defendant's motions for summary judgment, for directed verdict and for judgment n.o.v., because the alleged oral contract was unenforceable in that it violated the UCC Statute of Frauds. ORS 72.2010. Plaintiffs respond that the defendant was barred on the basis of promissory estoppel from raising the Statute of Frauds as a defense.

Traditionally, a promissory estoppel claim has been used to supply the element of consideration where to

---

[1] A threshold question in this case, though not raised by the parties, is whether Oklahoma or Oregon law applies. After reviewing each state's law relevant to the issues raised in this case, we conclude that the relevant Oklahoma law is substantially the same as that of Oregon. A provision identical to ORS 72.2040(3) is codified in OSA tit. 12A § 2-204(3). We discuss Oklahoma law as it applies specifically to the promissory estoppel issue in n 3 *infra.*

refuse to enforce an otherwise valid promise would work an injustice on a party who relied to his detriment on the promise. Calamari & Perillo, *The Law of Contracts*, §§ 99-105 (1970). In *Stevens v. Good Samaritan Hosp.*, 264 Or 200, 504 P2d 749 (1972), however, the Oregon Supreme Court held that promissory estoppel could be used to defeat the application of Oregon's general Statute of Frauds.[2] *See also, United Farm Agency v. McFarland*, 243 Or 124, 411 P2d 1017 (1966).

The issue in the present case is whether promissory estoppel should be allowed as an exception to the *UCC* Statute of Frauds. ORS 72.2010. That statute is worded somewhat differently from the general Statute of Frauds in ORS 41.580. It states:

"(1) Except as otherwise provided in this section a contract for the sale of goods with a price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for

---

[2] ORS 41.580, the general Statute of Frauds, provides:

"In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:

"(1) An agreement that by its terms is not to be performed within a year from the making.

"(2) An agreement to answer for the debt, default or miscarriage of another.

"(3) An agreement by an executor or administrator to pay the debts of his testator or intestate out of his own estate.

"(4) An agreement made upon consideration of marriage, other than a mutual promise to marry.

"(5) An agreement for the leasing for a longer period than one year, or for the sale of real property, or of any interest therein.

"(6) An agreement concerning real property made by an agent of the party sought to be charged unless the authority of the agent is in writing.

"(7) An agreement authorizing or employing an agent or broker to sell or purchase real estate for a compensation or commission; but if the note or memorandum of the agreement is in writing and subscribed by the party to be charged, or by his lawfully authorized agent, and contains a description of the property sufficient for identification, and authorizes or employs the agent or broker to sell the property, and expresses with reasonable certainty the amount of the commission or compensation to be paid, the agreement shall not be void for failure to state a consideration.

sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states the term agreed upon, but the contract is not enforceable under this subsection beyond the quantity of goods shown in such writing.

"(2)   Between merchants, if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) of this section against such party unless written notice of objection to its contents is given within ten days after it is received.

"(3)   A contract which does not satisfy the requirements of subsection (1) of this section but which is valid in other respects is enforceable:

"(a)   If the goods are to be specifically manufactured for the buyer and are not suitable for the sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

"(b)   If the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

"(c)   With respect to goods for which payment has been made and accepted or which have been received and accepted in accordance with ORS 72.6060."

■ ■   Estoppel is introduced into the Code through ORS 71.1030, which states:

*"Unless displaced by the particular provisions of the Uniform Commercial Code,* the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, *estoppel,* fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." (Emphasis supplied.)

Our examination of those two provisions leads us to the conclusion that promissory estoppel should be allowed to defeat reliance upon the UCC Statute of Frauds. The central issue is whether promissory estoppel is specifically displaced by ORS 72.2010. Because it is not mentioned in

the statute, the only arguable means of displacement is the legislature's silence. We do not believe that silence constitutes displacement of estoppel from the Statute of Frauds. In light of ORS 71.1030, we hold that if the legislature did not want estoppel to apply to application of the Statute of Frauds, it would have stated that intent expressly.[3]

---

[3] Courts in other states are split on this issue. Among those cases that have held that promissory estoppel is not an exception to the UCC Statute of Frauds are: *Ivey's Plumbing & Elec. Co. v. Petrochem Maintenance, Inc.,* 463 F Supp 543, 552-54 (ND Miss 1978); *Cox v. Cox,* 292 Ala 106, 111-12, 289 So 2d 609, 613 (1974); *C. G. Campbell & Son v. Comdeq Corp.,* 586 SW2d 40, 40-41 (Ky Ct App 1979); *see also, Farmland Serv. Coop., Inc. v. Klein,* 196 Neb 538, 543, 244 NW2d 86, 89-90 (1976) (equitable exception where fraud is present, but not merely where there is reliance to one's detriment).

Cases allowing such an exception include: *R.S. Bennett & Co. v. Economy Mechanical Indus., Inc.,* 606 F2d 182, 186-89 (7th Cir 1979); *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F2d 207 (8th Cir 1976); *Jenkins & Boller Co. v. Schmidt Iron Works, Inc.,* 36 Ill App 3d 1044, 1046-48, 344 NE2d 275, 277 (1976); *Meylor v. Brown,* 281 NW2d 632, 634-35 (Iowa 1979); *Warder & Lee Elevator, Inc. v. Britten,* 274 NW2d 339, 341-44 (Iowa 1979); *Decatur Coop. Ass'n v. Urban,* 219 Kan 171, 176-80, 547 P2d 323, 329-30 (1976); *Maryland Supreme Corp. v. Blake Co.,* 279 Md 531, 548-50, 369 A2d 1017 (1977); *Fairway Mach. Sales Co. v. Continental Motors Corp.,* 40 Mich App 270, 272, 198 NW2d 757-58 (1972); *Jamestown Terminal Elevator Inc. v. Hieb,* 246 NW2d 736, 740-42 (ND 1976); *Dangerfield v. Markel,* 222 NW2d 373, 378-79 (ND 1974); *Farmers Elevator Co. v. Lyle,* 90 SD 86, 91-93, 238 NW2d 290, 293-94 (1976).

A few of the cases allowing promissory estoppel as an exception restrict its application to situations where there is a promise to reduce the agreement to writing. *See Tiffany, Inc. v. W. M.K. Transit Mix, Inc.,* 16 Ariz App 415, 419-20, 493 P2d 1220 (1972).

So far as we can determine, the present question is still an open one under Oklahoma law. Two Oklahoma cases deal with situations similar to this one. In *Lacy v. Wozencraft,* 188 Okla 19, 105 P2d 781 (1940), the court endorsed the use of what it referred to as promissory estoppel. It stated that the application of estoppel required, among other things, some false representation or concealment of facts and an intention that some action be taken thereon. This differs, of course, from promissory estoppel as used in the instant case. As we use it, promissory estoppel requires only a future promise rather than a false representation or concealment of facts.

In *Darrow v. Spencer,* 581 P2d 1309 (Okl 1978), Darrow agreed orally to sell hay to Spencer during the 1975 season. Spencer sued Darrow claiming that the agreement required Darrow to sell him all the hay grown. Darrow admitted that an agreement was reached but denied that he was obligated to sell all his hay to Spencer. Darrow raised Oklahoma's UCC statute of frauds, which is identical to ORS 72.2010. Spencer relied on promissory estoppel. The court cited *Lacy v. Wozencraft, supra,* and concluded:

> "In the case before us, we hold that the employment of the doctrine of promissory estoppel would be inappropriate, as under tagreement had been reached concerning the sale of all his hay. In so holding, we note that the trial

Our conclusion is also influenced by ORS 71.2030, which states:

> "Every contract or duty within the Uniform Commercial Code imposes an obligation of good faith in its performance or enforcement."

Allowing promissory estoppel as an exception to the Statute of Frauds is consistent with the obligation of good faith. Exclusion of promissory estoppel, on the other hand, would allow a party to enter into an oral contract, induce the other party to rely to its detriment and yet completely escape liability under the contract. We do not believe the legislature intended such a result. *See* J. White and R. Summers, *Uniform Commercial Code,* § 2-6 at 69-70 (2d ed 1980).

Defendant argues that allowing promissory estoppel to defeat the Statute of Frauds would render the statute meaningless. It is true that any exception to such a writing requirement increases the possibility of fraud through perjury. Despite that fact, the Supreme Court has created exceptions to the general Statute of Frauds for both promissory estoppel and for part performance, and the Code's Statute of Frauds contains some express exceptions. *See* ORS 72.2010(3), *supra.* Neither the Oregon court nor the legislature apparently believed that creating exceptions to the statute render it a nullity. As the court made clear in *Stevens v. Good Samaritan Hosp., supra,* a promissory estoppel exception essentially enhances the Statute of Frauds by preventing its use as an instrument of fraud. Neither do we believe that a promissory estoppel exception eliminates the incentive for merchants to memoralize their agreements 'in writing. Those who would comply with the statute to avoid unenforcibility of their agreements would likewise comply to avoid the uncertainity and difficulty of

---

judge stated that he thought Dr. Darrow was not sure that the parties had reached an agreement. This being the case, we cannot say that Dr. Darrow should be estopped from raising the defense of the Statute of Frauds. Accordingly, we refuse to apply the doctrine of promissory estoppel, and therefore conclude that the contract before us, save for the portions already performed, was not enforceable under the Statute of Frauds as set forth at 12A O.S.1971 § 2-201."

The court in *Darrow* did not address the issue of whether promissory estoppel *could be* raised by an exception to the Code's Statute of Frauds; it decided only that Darrow was not estopped under the existing facts.

having to prove the elements of promissory estoppel at trial.

■       To avoid a Statute of Frauds defense through promissory estoppel, it is necessary to prove 1) actual reliance on a promise, 2) a definite and substantial change of position occasioned by the promise and 3) foreseeability to the promisor, as a reasonable person, that the promise would induce conduct of the kind that occurred. *Schafer et al v. Fraser et ux,* 206 Or 446, 472, 290 P2d 190 (1956). The difficulty of meeting that burden of proof should both encourage merchants to put agreements into writing and decrease the likelihood of a proponent of a contract being able to prove its existence through perjury.

It has been suggested that allowing a reliance exception to the statute would make it possible for one party unilaterally to create an enforceable contract simply by relying substantially on discussions that did not, in fact, result in any actual agreement. It is highly unlikely, however, that any merchant would rely to his significant detriment on a nonexistent agreement in hope that he could convince a trier of fact that an agreement was actually reached and that the elements of promissory estoppel were satisfied.

■       Defendant also argues that the promissory estoppel exception would hamper the consistency and predictability which the Code was designed to bring to commercial transactions. As the Code provisions cited above concerning the application of good faith and estoppel suggest, the legislature did not intend to provide predictability and consistency at the expense of equitable principles. The Code's Statute of Frauds provides a means of assuring certainty in dealings between merchants. The promissory estoppel exception assures that, when merchants do not avail themselves of the protections provided by the Statute of Frauds, the requirement of good faith is not abrogated. We are convinced that such a balance between predictability and good faith is consistent with the legislature's intent.[4]

---

[4] Potters urge that any doubt as to the applicability of promissory estoppel under the UCC is eliminated by Restatement (Second) of Contracts, § 217 A (Tent. Draft Nos. 1-7, 1973). It states:

■ Finally, we must decide whether there was substantial evidence to satisfy the requirements of promissory estoppel. As we pointed out above, Potter's testimony Potter'sin California in reliance on defendant's promise satisfies the actual reliance and substantial change of position requirements. His testimony that he reached an agreement with Gil Kent in January, 1979, that in June of that year he told defendant of the offers he had from other buyers and that Hatter Farms did not indicate to him that it was no longer interested in the poults satisfies the reasonable foreseeability requirement.

There was substantial evidence of the existence of an oral contract between plaintiff and defendant. Although the contract would otherwise be unenforceable for violating the Statute of Frauds, there was substantial evidence here of promissory estoppel barring defendants' assertion of that defense.

Affirmed.

---

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the statute of frauds if injustice can be avoided only by the enforcement of the promise. The remedy granted for breach is to be limited as justice requires."

This provision of the Restatement did not exist when ORS 72.2010 was adopted in 1961. Since its adoption, the legislature has not amended ORS 72.2010, either accepting or rejecting § 217A. Thus, we do not find it indicative of the legislature's intent.