Argued and submitted December 31, 1992, remanded for modification of judgment March 31, appellant's petition for reconsideration filed May 4 allowed by opinion July 14, 1993

See 121 Or App 574, 855 P2d 1164 (1993)

Stephen HOLMES,
*Respondent,*

*v.*

C. Mike HOLMES,
*Appellant.*

(90-15-130 CV; CA A72603)

849 P2d 1140

David B. Hydes, Canyon City, argued the cause for appellant. With him on the briefs was Hydes & Nickel, Canyon City.

John U. Grove, Milton-Freewater, argued the cause for respondent. With him on the brief was Monahan, Grove & Tucker, Milton-Freewater.

Before Rossman, Presiding Judge, and Richardson, Chief Judge, and De Muniz, Judge.

ROSSMAN, P. J.

## ROSSMAN, P. J.

Plaintiff Stephen Holmes (Steve) brought this action for an accounting and dissolution of one or more partnerships that he had with his son, defendant Mike Holmes (Mike), and for cancellation of a deed. Mike appeals from the trial court's judgment, assigning error to findings concerning what constitutes the assets of the partnership, the distribution of those assets and the cancellation of the deed. We review *de novo* and affirm the trial court, except with regard to the distribution of assets.[1] We need address only three of the assignments of error.

■     Mike first contends that the trial court erred in determining that he and Steve were partners for the purpose of operating and owning River Ranch (the ranch). Although we review *de novo*, in view of the fact that the trial court has observed the witness' demeanor, its findings are entitled to substantial weight, particularly when the facts are in dispute and the credibility of witnesses is an important factor. *Laird v. Johns*, 276 Or 1095, 557 P2d 670 (1976).

---

[1] The trial court found:

"1. That [Steve and Mike] began a joint operation or venture in 1973 or thereabouts which grew like Topsy through the years and by 1985, included logging, construction and farming operations, the last mentioned activity beginning with the inclusion of the River Ranch in the venture in about 1985[. T]here are no written articles of co-partnership and the books and records leave considerable to be desired, but under the circumstances the accounting by Cecil Grow, a CPA who did the accounting for tax purposes for both partners over the years with the joint participation and consultation of both partners, comes the closest to making sense.

"2. That the River Ranch included $47,750 worth of irrigation equipment listed in Exhibit 20 is partnership property. That the transfer of the title to the River Ranch by deed dated March 26, 1987, was for the purpose of reducing the partnership financing costs and that there was no purchase of the River Ranch by the defendant.

"3. That [Steve] contributed his equity in the River Ranch together with his then irrigation equipment to the partnership which amount to approximately $165,000.00 at the time of the transfer.

"'* * * * *

"8. That the River Ranch will be transferred to [Steve] who will be responsible for and assume and agree to pay and save [Mike] harmless from all partnership debts and obligations, including the mortgage on the River Ranch to FHA, and the debts to Georgia McLaughlin and Keith Dodd.

"9. That [Steve] should conclude the winding up of the partnership affairs including the preparation of the necessary documents to transfer title to the proper[] party from the partnership."

In an extensive and well-reasoned memorandum opinion, the trial court said that it was impressed by the testimony of Steve, who "outline[d] the affairs of the parties without embellishment and with a genuine desire to get the matter concluded and seemed to be sincere." The court was not impressed by Mike's testimony, and expressed its belief that Mike was "so motivated by greed that his entire testimony was suspect." Under the circumstances, the basic issue is one of credibility, and, therefore, it would be of no assistance to the bar to describe all the disputed details of the parties' dealings. We summarize the relevant facts.

From 1957 to 1960, Steve was in a construction business with his father-in-law, Bill Foss, as Foss & Holmes Construction. After Foss's death, Steve continued the business under the same name. Mike began to work with Steve at Foss & Holmes in 1975. There are no express partnership agreements, but the parties agree that they were in partnership as Foss & Holmes.

Steve owned the ranch, having inherited it from his father. Until 1983, he leased it for an annual income of $5,000. Beginning in 1983, Steve farmed the ranch himself, and hay sales brought from $30,000 to $50,000 per year. In 1984 and 1985, funds were expended for the purchase of farm and irrigation equipment valued at $58,000, and, for tax reasons, those assets were placed in Mike's name. Beginning in 1984, the parties' joint books show that the funds of the ranch and Foss & Holmes were commingled. Money and assets were shifted from the two businesses' various bank accounts as was necessary to achieve tax advantages and to protect property from Steve's creditors. Ranch activities and Foss & Holmes activities were reported to and considered together by Mike's and Steve's accountant for tax purposes. Mike and Steve reported their income for tax purposes not necessarily to reflect the actual distribution of income between them, but so as to minimize their overall tax liability.

In 1985, Mike signed operating and equipment loan agreements at the Bank of Eastern Oregon, the proceeds of which were intended for the use of Foss & Holmes and the ranch. The loans were secured by a mortgage on the ranch and ranch farm and irrigation equipment. More ranch assets were transferred to Mike, again for tax purposes. In 1986,

Steve obtained an FHA loan of $174,000 at 10 percent interest to pay off the loans at the Bank of Eastern Oregon. Then, in 1987, Steve learned of a special low interest FHA loan available for the purchase of property from a parent. In order to reduce the annual payment on the FHA mortgage from approximately $21,000 to $10,000, Steve deeded the ranch to Mike, and Mike signed an FHA mortgage for approximately $172,000. Mike agrees that the transfer was not intended by the parties to alter Mike's interest in the ranch or to transfer an interest to him, but that it was accomplished only so that Steve and Mike could benefit from the low interest loan. No money changed hands. Mike has not paid any money to Steve for the property. The transfer was not treated as a sale on the parties' books. Mike did not claim ranch income as his own after the transfer. There were no changes made in ranch operations. Steve continued to operate the ranch, and the money from hay sales was used to pay operating and equipment loans for both Foss & Holmes and the ranch.

Steve argues that, from the inception of Mike's involvement in the financing and operational decisions of the ranch in 1984 and 1985, the ranch has been a partnership asset and Mike has been his partner in its operation *and* ownership. He contends that, despite his 1987 deed of the ranch to Mike, the ranch continues to be a partnership asset, and should be treated accordingly. The trial court agreed, and treated the ranch as an asset of the partnership, distributing it to Steve, with the limitation that Steve "be responsible for and assume and agree to pay and save [Mike] harmless from all partnership debts and obligations including the mortgage on the River Ranch to FHA."

Mike contends, essentially, that although the parties were partners in Foss & Holmes, and despite the commingling of assets and money in the parties' various business accounts, they never intended that they would be partners in the operation and ownership of the ranch. He argues that the idea of treating the operation of the ranch as a partnership and the ranch as a partnership asset was fabricated by Steve at the outset of the parties' dispute concerning their interests, and that it is intended merely to enable Steve to retain an interest in the ranch, despite the fact that he has deeded it to Mike, and to share with Mike his ranch obligations and

liabilities. Mike testified that the parties never intended that he acquire an interest in the ranch; he contends, nonetheless, that he owns it free and clear of any of Steve's obligations, primarily because he views it as compensation for money owed him by Steve.

A partnership is an association of two or more persons to carry on as co-owners of a business for profit. ORS 68.110(1). A mere community or commonality of interest, such as the right to share in profits as compensation for services rendered, does not make one a partner; the right to share in profits must result from part ownership of the business. *Hayes v. Killinger*, 235 Or 465, 472, 385 P2d 747 (1963). Whether the parties were partners depends on their intentions and conduct. *Laird v. John, supra*. The plaintiff must prove that the parties mutually intended to enter into such a relationship. *Burnett v. Lemon, et ux*, 185 Or 54, 199 P2d 910 (1949). When there is no written agreement, the court looks primarily to the parties' conduct and course of dealing to determine whether a partnership existed. *Oshatz v. Goltz*, 55 Or App 173, 637 P2d 628 (1981). If they function as a partnership, the parties must assume the attendant duties and liabilities. Elements to be considered include the sharing of profits and losses and the right to exert some control over the operation. *Hayes v. Killinger, supra*, 235 Or at 471. In the absence of an agreement to the contrary, the obligation to share profits and losses will be implied. *See Dean Vincent, Inc. v. Russell's Realty*, 268 Or 456, 465, 521 P2d 334 (1974).

We find that the parties were partners in the operation of the ranch, and that Steve contributed the ranch to the partnership. A transfer of partnership assets from one partner to another does not necessarily dissolve the partnership. The fact that Steve later transferred the ranch to Mike did not end the partnership or remove the ranch as a partnership asset, if the parties intended that it would remain a partnership asset. *See* ORS 68.220(3).[2] In *Davis v. Tadevic*, 73 Or

---

[2] ORS 68.220(3) provides:

"Where title to real property is in the name of one or more but not all of the partners, and the record does not disclose the right of the partnership, the partners in whose name the title stands may convey title to such property, but the partnership may recover such property if the partners' act does not bind the partnership under the provisions of ORS 68.210(1)."

App 587, 590, 699 P2d 1140, *rev den* 299 Or 663 (1985), we said:

> "It is well established — and also self-evident — that title to the real property of a partnership or joint venture may reside in one of the members rather than in the entity and that the locus of the title does not necessarily affect either the entity's rights in the property or the entity's existence. *Fenton et al. v. State Ind. Acc. Com.*, 199 Or 668, 672, 264 P2d 1037 (1953)."

We find that the purpose of the transfer of the ranch from Steve to Mike was to lessen the partnership's overall expenses, and that there never was an intention to remove it from the partnership. We agree with the trial court that the ranch continued to be a partnership asset.

■       Mike also contends that the trial court erred in its distribution of the partnership assets. The court found that, at the time Steve contributed the ranch to the partnership, he had equity of $165,000. That is not seriously disputed by Mike. The evidence at trial placed the value of the ranch at the time of trial between $325,000 and $450,000. Steve testified that it was worth approximately $450,000. The court apparently accepted the value of $425,000 recommended by Steve in his closing trial memorandum. It awarded the ranch to Steve, but also assigned full responsibility to Steve for all partnership debts, totalling approximately $300,000 to $350,000. To Mike, the court awarded equipment having a value of $54,850 and the judgment of $26,069.17. The trial court's distribution fairly accounts for the parties' contributions to the partnership and the speculative value of the ranch. We conclude, nonetheless, that instead of awarding the ranch to Steve, the court should have ordered it sold to pay off partnership debts.

ORS 68.620 provides, in part:

> "In settling accounts between partners after dissolution, the following rules shall be observed, subject to any agreement to the contrary:
>
> "(1) . The assets of the partnership are:
>
> "(a)   The partnership property;
>
> "(b)   The contributions of the partners necessary for the payment of all liabilities specified in subsection (2) of this section.

"(2)  The liabilities of the partnership shall rank in order of payment, as follows:

"(a)  Those owing to creditors other than partners;

"(b)  Those owing to partners other than for capital and profits;

"(c)  Those owing to partners in respect of capital;

"(d)  Those owning to partners in respect to profits.

"(3)  The assets [of the partnership] shall be applied in the order of their declaration in subsection (1) of this section to the satisfaction of the liabilities."

ORS 68.600 provides that "each partner * * * may have the partnership property applied to discharge its liabilities." Under both of those sections, Mike was entitled to have the assets of the partnership sold to satisfy partnership debts. Although the judgment orders Steve to hold Mike harmless for partnership debts, that order has no effect on the rights of third parties. Additionally, although the ranch debt is secured by the ranch, Mike is the named obligor on the FHA loan, which now totals over $200,000. He is also 50% liable for the other debts of the partnership, approximately $125,000. Although the court clearly did not intend that Mike would share in the debts of the partnership, its judgment exposes him to potential liability for the full amount of the debt, as well as to potential litigation to enforce the hold harmless provision of the judgment. Accordingly, we conclude that the ranch should be sold and that all partnership debts should be paid from the proceeds. We remand to the trial court to order sale of the property pursuant to ORS 68.600, and for entry of an appropriate judgment as to distribution of the proceeds.

Remanded for modification of judgment not inconsistent with this opinion.