Argued and submitted November 9, 1992, affirmed August 18, appellants' petition
for reconsideration filed September 14, allowed by opinion November 3, 1993
See 124 Or App 275, 862 P2d 508 (1993)

Frances P. FRANKLIN,
Kaye Franklin and Regena P. Franklin,
dba EFKR Properties,
*Respondents,*

*v.*

Hubert B. STERN
and Lee E. Stern,
*Appellants,*

*and*

Robert BENNETT
and Settler's Corner, Inc.,
an Oregon corporation,
*Defendants.*

(90-CV-0397-ST; CA A72165)

858 P2d 142

Max Merrill, Bend, argued the cause for appellants. With him on the briefs was Merrill, O'Sullivan, MacRitchie, Petersen & Brady, Bend.

Don A. Dickey, Salem, argued the cause for respondents. With him on the brief were Douglas, Dickey & Lynch, Salem, and Rick T. Haselton and Lindsay, Hart, Neil & Weigler, Portland.

Before Warren, Presiding Judge, and Rossman and Riggs, Judges.

ROSSMAN, J.

Warren, P. J., dissenting.

## ROSSMAN, J.

Plaintiffs Frances, Kaye and Regena Franklin brought this action seeking a declaratory judgment that they have an agreement with defendants Hubert and Lee Stern (Sterns) under which they are entitled to purchase from defendants 65 percent of the shares of Settler's Corner, Inc., a corporation that owned the Sun Country Mobile Home Park (Sun Country). They also sought specific performance of the agreement or, in the alternative, damages for breach of contract and breach of fiduciary duty. The trial court entered a judgment under ORCP 67B, directing specific performance of the agreement. Sterns appeal. Because plaintiffs seek specific performance, we review *de novo*, and affirm.

In 1978, plaintiffs purchased Sun Country from Settler's Corner, then owned exclusively by Sterns, on a 17-year contract. They operated Sun Country as a family business, and lived there and managed it. In 1982, plaintiffs sold Sun Country to a third party for less than what they owed on the contract to Settler's Corner, and the third party assumed all of plaintiff's interest in the contract. Settler's Corner nonetheless approved of the sale and reduced the balance owed on their contract to the amount of the third party sale. Additionally, Sterns and plaintiffs agreed that they would split proceeds of the third party sale in excess of the amount that Settler's Corner was indebted to the bank on the property. Plaintiffs moved out of Sun Country.

In 1985, the third party defaulted on the contract, and Sterns asked that plaintiffs return to Sun Country and manage it for a monthly salary, free rent and the ability to install and rent some of their own mobile homes. Sterns also agreed to give plaintiffs a 35 percent interest in Sun Country. Plaintiffs worked hard to make Sun Country profitable, but it continued to experience financial difficulties. In October, 1987, U.S. National Bank, which held Settler's Corner's mortgage on Sun Country, expressed its intention to foreclose.

Faced with the possible loss of their entire investment, Sterns promised plaintiffs that: (1) if plaintiffs deeded their 35 percent interest in Sun Country to Settler's Corner, to facilitate Settler's Corner's filing of bankruptcy under

Chapter 11 of the Bankruptcy Code, and (2) agreed to operate the park and see it through the bankruptcy, Sterns would sell Sun Country to plaintiffs "on some reasonable terms."

But for Sterns' promises, plaintiffs would not have relinquished their interest in the park and would have stopped managing it. Because of Sterns' promises, plaintiffs improved and upgraded the park with significant expenditure of their own time, energy and money. Kaye Franklin quit her job to help Frances and Regena Franklin manage the park. Plaintiffs assumed primary responsibility for seeing Settler's Corner through the bankruptcy, including hiring an attorney and assisting the attorney to negotiate a settlement with the bank to reduce Settler's Corner's secured debt from approximately $400,000 to $150,000. The Bankruptcy Court approved Settler's Corner's Chapter 11 plan of reorganization, including a provision requiring Sterns to transfer 35 percent of their interest in Settler's Corner to plaintiffs.

Sterns made no monetary contribution to Sun Country's operations after 1985. After the bankruptcy and over a period of 18 months, plaintiffs and Sterns negotiated the terms of plaintiffs' acquisition of Sterns' remaining 65 percent interest in Settler's Corner, until August 30, 1990, when they reached the alleged final oral agreement on the terms of their contract, under which plaintiffs agreed to pay Sterns either $50,000 in cash before April 19, 1991, or $60,000 at 9 percent annual interest, with monthly payments of $525 over 20 years.

After concluding the alleged oral agreement with plaintiffs, Sterns received an offer on October 1, 1990, from defendant Robert Bennett to purchase the park for $750,000, which price mistakenly included mobile homes owned by plaintiffs. After learning of Bennett's offer, plaintiffs contacted Sterns by telephone to confirm the existence of their agreement. In those conversations, Hubert Stern confirmed the terms of the August, 1990, agreement.

In January, 1991, Sterns voted their majority shares of Settler's Corner in favor of a sale of Sun Country to Bennett for $581,000. Plaintiffs filed this action for specific performance of the alleged oral agreement.

■ Defendants assert that plaintiffs' attempt to enforce the oral agreement for the sale of the shares of Settler's Corner must fail because the agreement does not comply with the Statute of Frauds. ORS 78.3190 provides:

"A contract for the sale of securities is not enforceable by way of action or defense unless:

"(1) There is some writing signed by the party against whom enforcement is sought or by the party's authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price."

The agreement to purchase the shares has never been reduced to writing. We conclude, however, that defendants are estopped to assert the Statute of Frauds. In reliance on Sterns' oral promise in 1987 to sell their shares in Sun Country, plaintiffs changed their positions dramatically, in a manner that was foreseeable, and indeed encouraged, by Sterns. *See Potter v. Hatter Farms*, 56 Or App 254, 260, 641 P2d 628 (1982). Although plaintiffs were compensated for their efforts to steer Settler's Corner through the bankruptcy and manage Sun Country, the compensation did not, nor was it intended to, match the value of their efforts. Plaintiffs also invested substantial sums of their own money for the purchase of mobile homes. Plaintiffs' reliance was reasonable considering the informality and cooperativeness of the parties' past dealings. We conclude that defendants are estopped to assert the Statute of Frauds as a defense to the enforcement of their agreement to sell Sun Country to plaintiffs, and that plaintiffs are entitled to establish the terms of that agreement.

■ Although, in 1987, the agreement was not definite as to many of its material terms, we find that, by August, 1990, the parties had agreed to definite terms. Frances Franklin testified that, on August 30, 1990, she and Hubert Sterns had reached an oral agreement for a sale of Sterns' shares in Settler's Corner for $50,000 cash or $60,000 over time. In his testimony at trial, Hubert Stern testified that he had agreed to the described terms. He further testified, however, that he never reduced that agreement to writing because he had wanted to include an additional term requiring plaintiffs to

pay one-half of the proceeds of any future sale over $360,000, but that plaintiffs had rejected that term.

The trial judge noted inconsistencies in Stern's testimony and expressly found that plaintiff Frances Franklin was more credible. He found that the parties had reached a final and complete agreement for the sale of the shares and that the additional term was not a part of it. Although our review is *de novo*, we give great weight to the trial court's evaluation of credibility because of its opportunity to see the witnesses and to listen to their testimony. *Laird v. Johns*, 276 Or 1095, 557 P2d 670 (1976). We, too, find that Frances Franklin's testimony is more credible, and that the parties reached a final agreement as to the terms of the sale on August 30, 1990. Defendants and the dissent make much of a letter that Frances Franklin sent to defendants in September, 1990, one month after the agreement was finalized. In that letter, Frances expressed concern about plaintiffs' ability to make the first payment on sale of the property, which was due the following month. She also expressed uncertainty as to the value of the park, but said that her objective has always been to have a positive cash flow, and that she was not concerned about dollar values. That letter may have been an expression of "buyer's remorse" or dissatisfaction with the agreed upon terms, but we do not find it to be persuasive evidence that the terms of the sale were still subject to negotiation.

We affirm the trial court's determination that the parties had a final, enforceable agreement for the sale of Sterns' shares of Settler's Corner to plaintiffs at a price of $50,000 cash before April 19, 1991, or $60,000 at nine percent annual interest, with monthly payments of $525 over 20 years.

Affirmed.

**WARREN, P. J.,** dissenting.

The majority affirms the trial court's grant of specific performance to plaintiffs based on the terms of an August, 1990, agreement with defendants.

To obtain specific performance, an agreement must be

"complete and certain 'in all its parts'; that 'none must be left to be determined by future negotiations; and this is true without any regard to the comparative importance or unimportance of these several terms.' " *Phillips v. Johnson,* 266 Or 544, 556, 514 P2d 1337 (1973).

Plaintiffs' evidence conclusively showed that, in August, 1990, the parties had reached agreement on some of the terms of the agreement they seek to enforce. The Sterns admitted in court that they agreed to those terms, as far as they went, but presented evidence that showed that the parties had not reached a final agreement.

Part of the Sterns' evidence consisted of a letter that plaintiffs sent to the Sterns in September, 1990, one month after the date when plaintiffs contend they had reached a final agreement. In that letter, plaintiffs described the general condition of the park and discussed whether the park would generate enough revenue to cover plaintiffs' obligation to the Sterns. The letter also discussed the park's value and plaintiffs' intent to make the best possible offer on the park. The Sterns also presented evidence, through their own testimony and that of the attorney who represented them in their Oregon business dealings, that they would not agree to sell the park to plaintiffs unless plaintiffs agreed to pay them one-half of the proceeds of any future sale of the park over a certain figure. The Sterns indicated to their counsel that they would need to know the park's value to finalize that figure.

The September, 1990, letter from plaintiffs to the Sterns, combined with the testimony of Sterns' attorney, is compelling evidence that the price term had not been agreed upon as of August, 1990. Plaintiffs' own evidence establishes that they were still negotiating for a price. The parties had not reached a meeting of the minds, and they did not have a specifically enforceable agreement.[1]

---

[1] In *Bixler v. First National Bank,* 49 Or App 195, 199 n 4, 619 P2d 895 (1980), we noted that, if a promise is not sufficiently definite to be enforceable, estoppel might permit the party who reasonably relies on that promise to obtain reliance damages. Thus, we implicitly recognized that a person can reasonably and foreseeably rely on a promise that is not sufficiently definite to be enforced. However, we have never concluded, and I can find no precedent to support the conclusion, that an

Accordingly, I dissent.

---

indefinite promise on which a person reasonably, foreseeably and detrimentally relies, is definite enough to specifically enforce. *But see Adair Homes, Inc. v. Jarrell*, 59 Or App 80, 84, 650 P2d 180 (1982) (method by which missing term could be determined was sufficiently definite to enforce).