Argued January 9, reversed February 21, 1975

# HASKELL ET UX, *Respondents, v.* BORSCHOWA ET UX, *Appellants.*

532 P2d 14

*Robert L. Engle* of Eichsteadt, Bolland and Engle, Woodburn, argued the cause and filed a brief for appellants.

No appearance contra.

O'CONNELL, C. J.

.This is a suit in equity in which plaintiffs sought to enjoin interference with their use of defendants' land. After a trial, the circuit court entered a decree declaring that plaintiffs own an easement across defendants' land, ordering removal of portions of defendants' fence within the easement, and enjoining future interference with plaintiffs' use. Defendants appeal.

The parties own adjacent parcels of real property in Mt. Angel, Oregon. Plaintiffs have their home and operate a restaurant on their property. Defendants own and operate an auto repair garage on theirs. The dispute between them concerns their respective rights in a strip of defendants' land which lies adjacent to plaintiffs' restaurant. (See diagram.)

N

Borschowa (Dawson)

Haskell (Havlik)

Fence

Wall →

Addition

Restaurant

Garage

Gate →

Disputed Strip →

Public Street

Defendants use this strip as a means of ingress to the back part of their parcel which is used to store motor vehicles pending repair or other disposition. A part of defendants' business consists of storage of cars for police agencies. Continuation of this aspect of their business requires them to take precautions against unauthorized access to the stored vehicles. To this end defendants have placed a chain link fence around their property including a gate across the disputed strip. Because plaintiffs' restaurant is built upon the boundary between the parties' lands, the fence deprives plaintiffs of access to a portion of one side of their restaurant building. It also blocks off the approach to the rear of plaintiffs' restaurant across defendants' storage area. Defendants had permitted this access in the past.

Plaintiffs base their prayer for removal of the fence and gate and for an injunction against further interference upon a 1963 decree entered in a suit between prior owners of the two parcels involved here. The 1963 decree① established that defendants' prede-

---

①

"JUDGMENT ORDER AND DECREE

"This matter having come on regularly for trial on the 27th day of March, 1963, and the plaintiff [Dawson] appearing in person and by Richard F. May and Asa L. Lewelling, her attorneys, and the defendants [Havlik] appearing in person and by Otto R. Skopil, Jr., their attorney, and the Court having heard the evidence and arguments of counsel and the Court being fully advised in the premises finds:

"(1) That the plaintiff is the legal owner by adverse possession, of the real property described in her complaint and designated as Parcel A;

"(2) That the plaintiff is the legal owner, by deed conveyance, of the real property described in her complaint and designated as Parcel B;

"(3) That the defendants have caused to be constructed on portions of Parcel A and Parcel B certain improvements which

cessor in interest, Georgia Dawson, held title by adverse possession to a strip of land the record owner of which was John Havlik, Jr., plaintiffs' predecessor, and lying along the record boundary line between the parties. It further held that Havlik had placed improvements on Dawson's land which constituted a con-

constitute a continuing trespass and encroachment upon the real property of the plaintiff;

"(4) That because of the investment which defendants have in said improvements, defendants will not be required to remove the improvements;

"(5) That plaintiff is entitled to money damages.

"NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

"(1) That the plaintiff is the owner of the real property described in her complaint and designated as Parcels A and B, subject to the defendants right to the use of portions thereof as hereinafter set out:

"(2) That the defendants shall be permitted to leave upon said property the improvements heretofore constructed by them;

"(3) That the defendants, their heirs, assigns, executors and administrators, shall have the right to use the improvements, which they caused to be constructed upon the plaintiff's property, and that said right shall be exclusive provided, however, that the plaintiff, her heirs, executors, administrators and assigns, shall have the right to use said improvement for purposes of ingress and egress to the portions of Parcel A and Parcel B in which defendants have no rights, subject to defendants prior right to use as herein set forth. This provision is not to be construed as authorizing the plaintiff to make any alterations in the retaining wall constructed by defendants on portions of Parcels A and B of plaintiff's property.

"(4) That said right of use of said property shall have the same effect as an easement running with the land, provided, however, that the defendants may make no additional improvements thereon and that said easement and the right of use herein decreed shall cease to exist and all of defendants' rights adjudged herein shall revert to the plaintiff, her heirs, assigns, executors and administrators, in the event the defendants or their successors in interest abandon the improvements herein referred to.

"(5) That the plaintiff shall be required to maintain lateral support for said improvements.

tinuing trespass for which damages would lie. The decree did not, however, order removal of the encroachments because of the investment they represented. Instead, it was decreed that Havlik and his successors had the right to continue the encroachments where they stood and the exclusive right to use them subject only to the right of Dawson and her successors to use "said improvement for purposes of ingress and egress" to the unimproved portions of the strip. The 1963 decree did not characterize the rights awarded to plaintiffs' predecessor except in terms of their effect, nor did it specify the improvements with which it was concerned. The decree provided

> "[t]hat said right of use of said property shall have the same effect as an easement running with the land, provided, however, that the defendants [Havlik] may make no additional improvements thereon and  *  *  *  ,"

the rights cease upon abandonment by defendants.

Plaintiffs' complaint alleges the establishment of their rights under the 1963 decree and the interference with those rights by defendants. The trial court heard evidence as to the nature and identity of the improvements and the use made of them in 1963 after which it entered a decree establishing an easement in plaintiffs and ordering removal of the fence and gate.

■ The issue presented on this appeal is whether

---

"(6) That the plaintiff shall have judgment against the defendants and each of them in the sum of $1,750.00, together with interest thereon at the rate of six per cent per annum from the date hereof until paid, together with her costs and disbursements herein incurred.

"DATED AND ENTERED at Salem, Oregon this 30 day of Sept., 1963."

the record supports a finding that the fence and gate constitute an interference with the plaintiffs' rights created by the 1963 decree. The major difficulty in resolving this issue is that neither the 1963 decree nor the decree appealed from in the present case specifically describe the nature of plaintiffs' rights, nor the improvements involved. Nor does plaintiffs' complaint recite specifically how defendants' fence and gate interfere with plaintiffs' interest in the strip.[2]

The record reveals that plaintiffs interpret the 1963 decree as giving them the right to use delivery vehicles over the strip in question to reach the rear or western end of the restaurant. And although not precisely asserted, plaintiffs appear also to claim the right to park automobiles in the "easement" and the right to perform maintenance work on the portion of the restaurant within defendants' gate. The record reveals no evidence of interference with any right of plaintiffs.

The 1963 decree does not purport to grant plaintiffs an easement of right of way. It merely allows plaintiffs to maintain and use unspecified improvements which encroach upon defendants' land, which right is characterized as having the same *effect* as an easement. If it was intended that an easement of right of way was to be created, it would seem that the decree would expressly so provide. In this connection, it should be noted that the decree expressly provides for an easement of right of way in Dawson, defendants' predecessor in title.

[2] Contributing to the lack of precision in identifying the nature of plaintiffs' claim is the failure of plaintiffs to file a respondents' brief.

Plaintiffs' position appears to be that the improvements referred to in the 1963 decree consisted of a gravel fill contained by a retaining wall running alongside of the restaurant for approximately 160 feet from the street,[3] and that delivery vehicles used this fill to reach the rear of the restaurant for a few months in 1962 and 1963. The argument appears to be that the use of the strip for delivery purposes was included in the term "improvements." The factual basis of this argument was refuted by considerable testimony to the effect that the slope and composition of the fill was such that it would have been passable only in summer months, if at all. Moreover, the restaurant building was extended in 1967 to within a foot or two of the rear of the claimed driveway, thus rendering a non-trespassory approach to the rear of the building impossible. Therefore, even if an easement for ingress and egress to service of the rear of the building existed in 1963, it was abandoned in 1967 when plaintiffs' predecessor decided to make continuation of the use impossible.[4]

■ Plaintiffs' alternative contention that the 1963 decree created an easement for parking also is groundless. The 1963 decree explicitly allowed defendants' predecessor a right of ingress and egress over the improvements to their unencumbered land. Parking automobiles alongside the restaurant would be inconsistent with this right of passage. Moreover, there is little if any evidence that the area now within the fence was ever used for parking in connection with the restaurant.

---

[3] See diagram, *supra.*

[4] See Powers v. Coos Bay Lumber Co., 200 Or 329, 398, 263 P2d 913 (1954).

■ Plaintiffs' final contention at trial that the 1963 decree gives them the right to enter upon defendants' land for purposes of maintaining the restaurant building is well taken, but this alone is not enough to support the broad decree which the court entered. The right to use and maintain their improvements is precisely what the 1963 decree grants to plaintiffs. But, as we have already indicated, the record reveals no evidence that this right has been subjected to unreasonable interference. Defendants leave the gates open approximately 12 hours a day, six days a week. In addition, Mr. Borschowa testified at trial that a key could be obtained from any of his employees if plaintiffs needed access to the side of the restaurant at night or on Sundays. There is no reason to believe that plaintiffs cannot perform all needed maintenance under these circumstances. Thus, there is no equitable reason why defendants should be forced to remove their fence which serves an important function in the operation of their business. Nothing in this opinion should be taken to foreclose plaintiffs from seeking equitable protection if their right of access to their improvements at reasonable times should be infringed or threatened in the future.[9]

The decree of the trial court is reversed.

---

[9] The retaining wall mentioned in the 1963 decree was buried a few years later when defendants brought their property up to the level of plaintiffs' land. Thus, access to the retaining wall and maintenance of lateral support have no place in this appeal.