Argued and submitted June 22, affirmed September 9, 1987

JULE et ux,
*Respondents,*

*v.*

WALSH et ux,
*Appellants.*

(84-3811-NJ-2; CA A40375)

742 P2d 65

P. David Ingalls, Medford, argued the cause for appellant. With him on the briefs was Cowling & Heysell, Medford.

Garrison F. Turner, Medford, argued the cause for respondent. With him on the brief was Frohnmayer, Deatherage, deSchweinitz, Pratt & Jamieson, P.C., Medford.

Before Warden, Presiding Judge, and Van Hoomissen and Rossman, Judges.

WARDEN, P. J.

## WARDEN, P. J.

Defendants appeal from a judgment[1] that specifically enforces an earnest money agreement and requires defendants to deed to plaintiffs all of the tract described in the agreement rather than only the portion of it that defendants had actually deeded. Defendants assert that the agreement merged into the deed and that, therefore, it is no longer specifically enforceable. We disagree and, reviewing *de novo,* ORS 19.125(3), affirm.

In 1978, defendants owned 38 acres of agricultural land along the Rogue River near Gold Hill. That year, without first having had it surveyed, they had a title insurance company employe prepare a map showing the property divided into several lots and recorded the map in the county deed records. The planning commission approved the subdivision, and the assessor assigned tax lot numbers to the subdivided parcels. Because of the planning regulations in effect at the time, it was important that each lot contain at least five acres; otherwise, building private residences on them would be prohibited. The title insurance company employe calculated that the most northerly parcel, which the assessor designated as Tax Lot 503, contained 5.13 acres. Lot 503 was trapezoidal. The northern and southern boundaries ran due east and west, the eastern boundary ran north and south along John Day Road, and the western boundary followed Highway 234, which runs northeasterly from the southwest corner.

Early in 1984, the land was listed for sale with a local real estate broker. Plaintiffs, who lived in California but wanted to move to Oregon, learned of the availability of the land and made an offer for Lot 503. Plaintiffs and defendants agreed on the terms of sale and executed an earnest money agreement which described the property sold as "Tax Lot #503." Because the lot had never been surveyed, defendants promised in the agreement to provide a survey which "will *clearly mark all four corners* of property showing 5.13 acres of property as herein described." The survey, however, revealed that Lot 503 actually contained over six acres. Defendants consulted with the salesman who had shown plaintiffs the

---

[1] The dispositive document in this case is captioned "Decree." It is in fact a judgment. ORCP 67A.

property;[2] he told them that plaintiffs' primary concerns were that they have the full east side of the lot along John Day Road and that the lot contain 5.13 acres. Defendants then instructed the surveyor to create a lot which met those requirements. He did so by changing the southern boundary of Lot 503 to run west northwest rather than west from John Day Road, cutting out a triangular parcel along the southern boundary of the lot. The deed that defendants deposited in escrow, and which the escrow agent recorded after closing, contained the surveyor's description of the new lot rather than a description of the original Lot 503 as shown on the recorded map.

Plaintiffs were not aware of the change in the description of the land conveyed.[3] The salesman did not discuss it with them, and the map attached to the preliminary title report showed the lot as it appeared on the assessor's map and on the map recorded by defendants. Plaintiffs first learned of the change after the closing, when they received their title policy and the map attached to it, which showed the new shape of the parcel. They immediately got in touch with the salesman and came to Oregon to discuss the change with defendants. They made it clear that they believed that they had agreed to buy all of Lot 503 as an entity and that the deed was unsatisfactory, because it failed to convey the entire lot. Defendants refused to make any changes, and plaintiffs filed this action.

The trial court found that the parties intended to sell and buy Lot 503 "in gross" and that the reference to 5.13 acres in the agreement was to benefit plaintiffs by ensuring that they would receive at least that amount of land. We agree with that finding. Defendants' primary argument on appeal is that "[u]nder the doctrine of merger, the deed extinguished the covenant for conveyance contained in the prior earnest money agreement" and that, therefore, "there is nothing upon which specific performance can operate."

An executory contract for the sale of land merges into

---

[2] We agree with the trial court's finding that the salesman was an agent of defendants, the sellers, not of plaintiffs, the buyers.

[3] There are some conflicts in the evidence on this point; we agree with the trial court's resolution of them.

a later deed, because the parties intend the deed to be a fulfillment of the seller's obligations under the contract. With the delivery and acceptance of the deed, the contract is executed. As a New York court explained, in a passage which the Oregon Supreme Court quoted over a century later:

"Articles of agreement for the conveyance of land are, in their nature, executory, and the acceptance of a deed, in pursuance thereof, is to be deemed, *prima facie,* an execution of the contract, and the agreement thereby becomes void, and of no further effect. * * * [T]he *prima facie* presumption of law arising from the acceptance of a deed, is that it is an execution of the whole contract; and the rights and remedies of the parties, in relation to such contract, are to be determined by such deed and the original agreement becomes null and void." *Houghtaling v. Lewis,* 10 Johns 296, 298 (NY Sup Ct 1813), *quoted in Winn v. Taylor,* 98 Or 556, 576, 190 P 342, 194 P 857 (1921).

The New York court made clear that the purchaser's acceptance of the deed as a fulfillment of the contract is essential for there to be a merger. Oregon follows the same rule. *See City of Bend v. Title & Trust Co.,* 134 Or 119, 126-127, 289 P 1044 (1930); *Winn v. Taylor, supra.* That there is no merger without acceptance of the deed is essential to safeguard the purchaser. Without the purchaser's acceptance of the deed, or without a judicial determination that the deed complies with the contract, the contract remains executory. The option to refuse to accept protects the purchaser from a unilateral change on the part of the seller of the property he had promised to convey. In this case, it protects plaintiffs from defendants' unilateral change of the area to be included in Lot 503.[4]

Plaintiffs did not accept the deed; rather, they notified defendants that they believed that it failed to conform to what they had agreed to buy as soon as they discovered what it conveyed. The trial court found, and on *de novo* review we agree, that the deed did not convey what the parties intended defendants to convey. The earnest money agreement, therefore, did not merge into the deed but remains executory as to

---

[4] Defendants argue that acceptance of a deed is not necessary for it to be a valid conveyance. *See Halleck v. Havick,* 216 Or 23, 36, 337 P2d 330 (1959). That argument misses the point. The issue is not whether the deed that defendants gave was an effective conveyance of the property that the deed described; rather, it is whether plaintiffs accepted the deed as complying with defendants' obligation under the earnest money agreement and whether the deed actually did comply.

the land which defendants should have conveyed but did not. The trial court properly ordered defendants to convey the portion of Lot 503 that they had cut out, thereby making the actual conveyance conform to the agreement.[5]

Affirmed.

---

[5] Contrary to defendants' argument, we find the description of the land in the agreement to be sufficiently definite for specific performance.