Argued and submitted May 17, 1991 judgment modified in part; otherwise affirmed January 22, Ericsson's reconsideration and Braukman's reconsideration denied March 18, both petitions for review denied April 28, 1992 (313 Or 210)

# Robert J. ERICSSON
# and Teresa M. Ericsson,
*Appellants,*

*v.*

# Eugene BRAUKMAN,
# Farren T. Kohler, Gerald Bechler
# and Donna Muzzie,
*Respondents.*

(87-1087C; CA A64929)

824 P2d 1174

Jacob Tanzer, Portland, argued the cause for appellants. With him on the briefs was Ball, Janik & Novack, Portland.

Robert A. Browning, Forest Grove, and Janice M. Stewart, Portland, argued the cause for respondents. With Janice M. Stewart on the brief were Sara V. Fraser and McEwen, Gisvold, Rankin & Stewart, Portland.

Before Joseph, Chief Judge, and Richardson* and Deits, Judges.

DEITS, J.

---

* Richardson, J., *vice* Newman, J., deceased.

**DEITS, J.**

Plaintiffs brought this action for declaratory and injunctive relief to resolve a dispute with defendants, their neighbors, concerning an easement across defendants' property. The trial court issued a judgment defining the scope of the easement. Plaintiffs appeal.

The property owned by the parties is shown on the map (see Appendix). Parcel A is owned by plaintiffs, and defendants own Parcel B. Both properties were previously in the common ownership of the Davies, who conveyed Parcel A to Danielson in 1968. The contract of sale called for Danielson to have an easement across Parcel B:

> "First parties further grant to second parties the right and easement upon the old roads in the SE 1/4 of the NE 1/4 of Sec. 19; and in the North 1/2 of the SE 1/4 of Sec. 19, T2N, R3W, W.M., to use said roadway for ingress and egress to and from said property. First parties also grant second parties the use of the roads along the edge of the field in the SE 1/4 of the NE 1/4 of Sec. 19, said Township and Range for access to timber in the tracts conveyed."

The deed to Danielson, signed nine months later, describes the same easement, except that it does not restrict the use of the road along the field "for access to timber in the tracts conveyed." Plaintiffs purchased Parcel A from Danielson's successors in 1986. Their deed describes the same easement as in Danielson's deed. The Davies conveyed Parcel B to defendants Braukman and Kohler in 1971. Since that time, Parcel B has been further divided, and defendants each own a portion of it.

The property is in a rural, timber and agricultural area. Until plaintiffs purchased Parcel A and built their home on it in 1986, that portion of the property had only been used for logging. Parcel B has been used for growing raspberries, strawberries, wheat and Christmas trees. Braukman testified that he has about 50 acres of Christmas trees worth about $750,000 and that he uses over twenty pieces of large farm equipment during harvest every November and December. As shown in the map, roads run throughout Parcel B.

Soon after purchasing Parcel A, plaintiffs told Braukman that they planned to grade and gravel an access

road across Parcel B from Lodge Road to their house. They discussed grading Straight Road, which was not being used much at the time, instead of Loop Road, which was being used, but they did not reach an agreement. Plaintiffs proceeded to grade, ditch and gravel the roads, including Straight Road, Lower Field Road and Upper Field Road, as shown by the dots on the map. The work cost approximately $8,000. Defendants knew about it, but did not protest.

Defendants had encountered problems with theft, vandalism and dumping, and those problems increased after the improvement of the roads. In response, they put up gates on some of the roads on their property. However, the gates did not prevent theft, especially during harvest. As a result, they put locks on some of the gates and gave plaintiffs a key. That causes some inconvenience to plaintiffs and to persons visiting their property.

Plaintiffs' first assignment of error is that the trial court erred in declaring the location of their easement. The judgment ordered that

"[p]laintiffs' property rights include a 20 foot wide permanent easement for ingress and egress and for logging purposes over what is commonly referred to as the Loop Road and the Field Road which extends along the Western boundary of defendant's property to its most Northerly reach, and along the Pond Road from what is commonly referred to as the Landing Area to where that road enters the plaintiffs' property[.]"

Plaintiffs argue that they have the right to use all roads that were in existence on Parcel B at the time of the creation of the easement. They rely on the term "old roads," used in the deed, in arguing that all such roads are included in the easement. They also argue that the terms of the easement are ambiguous and that the evidence shows that, at the time of the conveyance, the parties intended to include all of the roads.

■ Contrary to plaintiffs' assertions, the language of the easement does not require the conclusion that it includes all of the roads that existed on the property in 1968. The first part of the easement grants ingress and egress to Parcel A from Lodge Road north along Loop Road and Lower Field Road to the landing and then westerly on Pond Road. Pond

Road and the landing are located in the SE 1/4 of the NE 1/4, and Loop and Lower Field Roads are in the N 1/2 of the SE 1/4, as described in the deed. The second part of the conveyance grants access to Parcel A from the landing along Upper Field Road to the northerly edge of Parcel B, the part of the easement in the SE 1/4 of the NE 1/4. In addition, the easement's stated purpose is for ingress and egress to Parcel A. The roads that we conclude are described by the conveyance provide that access. The additional roads that plaintiffs seek to include are not necessary for ingress and egress.

One reason that plaintiffs contend that the easement should be construed to include all roads on defendants' property is that they want the use of both Straight Road and Loop Road. Apparently Loop Road is less muddy in winter and is flatter, but Straight Road is easier for large trucks transporting long loads. However, the trial court found, and we agree, that Loop Road was included in the easement description, but Straight Road was not. The evidence shows that Loop Road was regularly used at the time of the conveyance in 1968. Until plaintiffs graded it in 1986, Straight Road was overgrown and had been used only during a short period in the mid-1970's, after plaintiffs' predecessor in interest asked permission to open it so that some poles could be transported.

Plaintiffs argue that, even if Straight Road was not included in the original conveyance, the easement was relocated by mutual consent.

"[An] easement holder and the servient estate owner may relocate the easement by mutual consent. Although such arrangement should be carefully drafted, courts will enforce executed oral understandings regarding relocation. Furthermore, an agreement to relocate may be implied from the parties' actions, such as when an easement holder uses a new location established by the owner of the servient estate or when a landowner stands by while the easement holder utilizes a different route." Bruce, *Law of Easements and Licenses in Land* ¶ 7.03[1][c] (1988). (Footnotes omitted.)

We conclude that, by plaintiffs' investment of considerable time and money in the improvement of Straight Road and by defendants' failure to object to the improvement and use of Straight Road, the parties implicitly agreed to relocate the easement from Loop Road to Straight Road.

Defendants assign error to the trial court's failure to restrict the use of the portion of the easement running north along Upper Field Road from the landing to timber access only. The language in the contract that the Davies signed when they originally conveyed the property shows that, at that time, they intended to restrict use of that part of the easement to timber access only. The contract reads:

> "First parties also grant second parties the use of the roads along the edge of the field * * * *for access to timber* in the tracts conveyed." (Emphasis supplied.)

However, the emphasized language was deleted when the deed was prepared, and the language of the deed prevails. *Jule v. Walsh*, 87 Or App 266, 269, 742 P2d 65 (1987). None of the conveyances since that time has included that restriction. Accordingly, we conclude that the use of that portion of the easement is not so restricted.

Plaintiffs also assign error to the trial court's order allowing defendants to have a gate across the easement that defendants can lock from November 1 to December 25. Plaintiffs contend that there has never been a gate on the easement and that, therefore, defendants have no right to put a gate on it. They assert that the gate is inconvenient, hazardous and infringes on their right to control the easement. Defendants contend that there have always been gates, that they have been closed and locked occasionally and that they are necessary to secure the property.

■ ■ The owner of a servient estate may use the area subject to an easement, if that use does not unreasonably interfere with the easement owner's rights. *Espedal v. Stone*, 88 Or App 138, 744 P2d 585 (1987). A gate across an easement may be permitted if "the reasonable use of [the servient estate] makes * * * gates necessary." *Jones v. Edwards*, 219 Or 429, 347 P2d 846 (1959). That is particularly true when the land is used for agricultural purposes and there is no express agreement for an open way. Bruce, *Law of Easements and Licenses in Land* ¶ 7.06[2][d][ii] (1988); *Restatement Property* § 486 (1944). The property is a rural, timber and agricultural area. Plaintiffs testified that they have gates on their property that are sometimes locked to keep out trespassers. Defendants testified that they have had problems on

their property with thefts of trees and equipment, destruction by vandals and dumping of rubbish and that the problems are greatest when the trees are small and during harvest. An expert testified that those are common problems on Christmas tree farms. We conclude that a gate across the easement is "reasonably necessary" for the enjoyment of Parcel B and does not unreasonably interfere with plaintiffs' rights under the easement.

■ A more difficult question is whether the gate may be locked.

"Generally, courts hold that a locked gate constitutes an unreasonable interference with the use of the easement, even though the dominant owner is furnished a key. A locked gate, notwithstanding the presentation of a key, curtails the dominant owner's use by restricting deliveries and social visits.

"Each situation, however, is governed by its particular set of facts, and courts have permitted locked gates when such gates were necessary for the servient owner to make reasonable use of his land. For instance, a landowner may install locked gates to keep cattle on his property. Moreover, several courts have found that a locked gate can be justified to protect the servient property against trespassers and vandals." Bruce, *Law of Easements and Licenses in Land* ¶ 7.06[2][d][iii] (1988). (Citations omitted.)

Defendants testified that locked gates have been effective against theft, vandalism and dumping. They contend that locks are particularly necessary during harvest, when the crops are most valuable and many large vehicles and pieces of equipment are on the property. Plaintiffs contend that a locked gate would interfere with emergency vehicles reaching their property and that it is difficult to receive deliveries and have drop-in guests and social gatherings, especially because their house is over a mile from the public road. We conclude that a locked gate from November 1 to December 25 is necessary for defendants' reasonable use of their property and that, if defendants provide plaintiffs with keys to the gate, it will not unreasonably interfere with plaintiffs' use of their easement. The locked gate serves an important function in the operation of the farms. *See Haskell v. Borchowa*, 271 Or 326, 334, 532 P2d 14 (1975).

■ Plaintiffs also argue that the trial court erred in denying their request for an injunction prohibiting defendants from interfering with their use of the easement. They argue that defendants have encroached on their easement by using it for agricultural equipment and semi-trailer trucks. They contend that the equipment has caused erosion, changes in the grade, mud holes and damage to the drainage ditches. They also claim that defendants have parked on the roadway, requiring plaintiffs to drive on muddy portions of the road or to ask the workers to move trucks or equipment.

As we said in *State Dept. of Fish and Wildlife v. Kortge*, 84 Or App 153, 158, 733 P2d 466, *rev den* 303 Or 534 (1987):

" '[T]here remains in the grantor [of the easement] the right of full dominion and use of the land, except as far as a limitation of his right is essential to the fair enjoyment of the right of way which he has granted. And it is not necessary that the grantor should expressly reserve any right which he may exercise consistently with a fair enjoyment of the grant.' *Miller v. Vaughn*, 8 Or 333, 336 (1880).''

Defendants may not do anything that prevents plaintiffs from having ingress and egress to their property, and any action by defendants that makes the road impassable or unreasonably interferes with plaintiffs access to their property is not permissible. However, the evidence that they presented on this point does not establish that any of defendants' actions have made the road impassable or have unreasonably interfered with plaintiffs' ingress and egress.

Judgment modified to substitute Straight Road for Loop Road in the easement, to allow a gate across the easement and to allow the gate to be locked from November 1 to December 25 each year, provided defendants furnish plaintiffs necessary keys at all times; otherwise affirmed.

# APPENDIX