EGAN, C.J.
*723 Plaintiff Eugene Water and Electric Board (EWEB) is a municipal utility company that generates electricity from the McKenzie River at its Leaburg-Walterville hydroelectric plant. EWEB owns an easement over defendant's property to excavate, construct, and maintain a waterway channel that allows fish to migrate around the Walterville plant. EWEB brought this declaratory judgment action seeking to establish its rights under the easement and to prohibit defendant's interference. The trial court granted EWEB's motion for summary judgment and issued the disputed declaratory judgment, from which defendant appeals, assigning several errors. We conclude that the trial court did not err and therefore affirm.
EWEB's original license with the Federal Energy Regulatory Commission (FERC) to generate electricity from the Walterville plant required EWEB to construct, inspect, operate, and maintain a "fish return channel" to mitigate the plant's effects on fish populations native to the McKenzie River. In doing so, EWEB is required to coordinate with several agencies, including FERC, the Oregon Department of Fish and Wildlife, the United States Army Corps of Engineers, and the Oregon Department of State Lands.
In 1968, EWEB obtained an easement over what is now defendant's property. The easement provides, as relevant:
"WHEREAS, The Fish Commission of the State of Oregon has required [EWEB] to erect a salmon fish rack or barrier across said Tail Race to prevent salmon from migrating up [the 'Tail Race' toward the Walterville plant] and forcing said salmon to proceed up the McKenzie River,
"* * * * *
"[Defendant's predecessors] *** hereby grant unto [EWEB] the right to excavate, construct and reconstruct the channel of said waterway *** from time to time in order to keep a sufficient flow of water which will attract and permit salmon to migrate through said waterway to the McKenzie River[.]"
*724 The easement also grants to EWEB "a way along the channel of the waterway along the most practical route." The easement further requires EWEB to construct and maintain a dike with culverts across the waterway "for access to and from both sides of the waterway." The easement states that it is binding on the parties' "successors and assigns."
Defendant acquired his property in 2000 and, since 2009, he has objected to EWEB's activities, contending that they exceed the scope of the easement. EWEB has conducted gravel removal activities over the years, in order to maintain adequate flow of water to draw fish to the channel. In 2010, EWEB removed up to 350 cubic yards of gravel from the channel. In 2014, EWEB determined that maintenance of the channel required the removal and relocation of 2,000 cubic yards of gravel. EWEB sought defendant's signature on a permit application required by the Department of State Lands and the Army Corps of Engineers. Defendant refused to sign the application and also threatened to *459 deny EWEB access to his property to perform the proposed work, unless EWEB paid him additional compensation.
EWEB's inability to work on the easement jeopardizes its ability to maintain its FERC license, and EWEB filed this action, seeking a declaration as to the scope of the easement and to confirm its right to enter defendant's property to conduct "activities reasonably related to its efforts to operate and maintain adequate flow on the Fish Return Channel and protect native fish species." Defendant responded that EWEB's proposed activities were not reasonable and necessary for the protection of "salmon," and that EWEB's desire to conduct activities to keep it in compliance with its FERC license exceeds the scope of the easement.
On EWEB's motion for summary judgment, the trial court entered a limited judgment providing, in part:
"EWEB's rights under the Easement include the right to *** [e]xcavate, construct, or reconstruct the Fish Return Channel in any way that EWEB concludes in its reasonable discretion is necessary to maintain sufficient water flow to continue to attract fish into the Fish Return Channel to the satisfaction of federal, state, and local agencies with jurisdiction over the Fish Return Channel."
*725 The judgment also permits EWEB to "access and maintain" existing roadways along the banks of the channel and to modify or construct roadways "as reasonably necessary to ensure" continued compliance with state, county, and local access road requirements. The judgment permits EWEB to use construction staging areas on defendant's property and to conduct "dewatering" activities, as reasonably necessary to complete its authorized activities under the easement. The judgment further permanently enjoins defendant from interfering with EWEB's access to his property to conduct activities permitted by the easement.
On appeal, defendant does not dispute that he has interfered with plaintiff's use of the easement, but he continues to contend that the proposed uses exceed the scope of the easement. As defendant correctly points out, EWEB's easement rights are limited to uses that are "reasonably necessary" to accomplish the easement's intended purpose. D'Abbracci v. Shaw-Bastian , 201 Or. App. 108, 121, 117 P.3d 1032 (2005) ("[T]he dominant estate holder's right to use the easement is limited to what is reasonably necessary to accomplish the intended purpose of the easement."); see ODOT v. Alderwoods (Oregon), Inc. , 358 Or. 501, 512, 366 P.3d 316 (2015) (citing Restatement (Third) of Property: Servitudes § 1.2 comment d (2000) ). Defendant contends in his first assignment of error that the trial court erred in granting summary judgment to EWEB, because there exists a question of fact as to whether it is reasonably necessary for EWEB to excavate 2,000 cubic yards of gravel from the channel to allow for the passage of salmon.
In reviewing the trial court's granting of EWEB's motion for summary judgment, we view the record in the light most favorable to defendant to determine whether there is a genuine issue of material fact as to whether the removal of 2,000 cubic yards of gravel is reasonably necessary to accomplish the intended purpose of the easement, and whether EWEB was entitled to judgment as a matter of law. ORCP 47 C.
In support of its motion for summary judgment, EWEB offered expert opinion that the removal of the gravel was necessary to maintain adequate stream flow for fish *726 to be drawn to the channel. EWEB submitted the declaration of its civil engineer, Mark Zinniker, who described how the shape, configuration, and flow of the river cause gravel deposits at the south end of the channel that restrict water flow into the channel and make it more difficult for fish to find the channel. Zinniker stated that periodic removal of the gravel is necessary in order to maintain adequate water flow in the channel to attract fish to the channel. The record on summary judgment also includes opinions from the United States Fish and Wildlife Service and the National Marine Fisheries Services that the annual removal of up to 2,000 cubic yards of gravel from the channel to ensure adequate water flow for fish to pass is consistent with existing biological opinions concerning the site. *460 In the face of EWEB's evidence that the removal of gravel is necessary to ensure adequate water flow for fish passage, defendant, as the party opposing EWEB's motion for summary judgment, bears the burden to present "specific facts showing that there is a genuine issue of material fact" for trial as to whether EWEB's proposed removal of gravel was reasonably necessary. ORCP 47 D. Defendant did not offer the opinion of an expert on gravel depths and stream flow necessary to encourage fish passage. Rather, in his declaration, defendant expressed his opinion that he does not believe, based on the information that had been provided to him by EWEB, that the annual removal of gravel is reasonably necessary to keep a sufficient flow of water through the channel to attract salmon and to permit them to migrate through the channel. And he further opined that, based on his observations as an avid fisherman on the McKenzie River for over 35 years and his communications with EWEB personnel, "much of the work performed by Plaintiff in and around the fish return channel" is unrelated to keeping a sufficient flow of water passing through the channel but, rather, is required by federal regulators on account of the effects of EWEB's operation of the hydroelectric project and is "designed to protect animal and fish species other than salmon." In his first assignment, defendant contends that his opinion creates a question of fact about the need for the gravel removal that precludes summary judgment. *727 Gravel depths and water flow necessary for fish migration are topics about which technical or specialized knowledge will assist the trier of fact. See OEC 702 (describing expert testimony). In light of the expert opinion offered by EWEB that the shape, configuration, and flow of the river cause gravel deposits that make it more difficult for fish to find the channel, and that the removal of gravel is necessary to make it possible for fish to find the channel, defendant's lay opinion, although admissible under OEC 701, does not create a genuine issue of material fact as to whether the removal of gravel is reasonably necessary for fish passage. Indeed, he does not point to any specific information from EWEB, on which he stated he based his opinion, that contradicts the need for gravel removal for that purpose. See Tiedemann v. Radiation Therapy Consultants , 299 Or. 238, 245, 701 P.2d 440 (1985) (on summary judgment, uncontroverted expert opinion can be sufficient to indicate that no factual dispute exists). And defendant's lay opinion, based on his experience as a fisherman and his conversations with EWEB personnel, that many of EWEB's activities on the easement do not relate to water flow and the protection of salmon, does not bear on that question at all. There being no genuine issue of material fact as to whether the removal of gravel is reasonably necessary to achieve adequate water flow for fish migration, we conclude that the trial court did not err in granting EWEB's motion for summary judgment.
In his second assignment of error, defendant raises a number of legal challenges to the terms of the judgment. Defendant calls out the judgment's statement that EWEB can carry out its work on the channel "in any way that EWEB concludes in its reasonable discretion is necessary." In defendant's view, that statement grants EWEB unfettered discretion to enter defendant's property to conduct work on the channel, without regard for defendant's rights as owner of the servient estate and beyond the scope of the easement. We agree with defendant that the judgment broadly describes EWEB's rights under the easement. But so does the easement (granting to EWEB "the right to excavate, construct and reconstruct the channel of said waterway * * * from time *728 to time in order to keep a sufficient flow of water"), the terms of which implicitly allow EWEB discretion in the exercise of its easement rights, including the right to enter defendant's property to carry out the necessary excavation, construction, or reconstruction.
Contrary to defendant's contention, however, EWEB's discretion is not unfettered, but must be exercised in a way that is reasonably necessary to accomplish the easement's intended purpose.[1] See *461 Alderwoods (Oregon), Inc. , 358 Or. at 512, 366 P.3d 316 ; D'Abbracci , 201 Or. App. at 121, 117 P.3d 1032. Here, the stated purpose of the easement is to allow EWEB to maintain sufficient flow of water through the channel for salmon migration. EWEB's exercise of discretion is necessarily limited to uses that are reasonably necessary to accomplish that purpose. We reject defendant's contention that the judgment's reference to "reasonable discretion" is inconsistent with the easement.
Defendant also asserts in his second assignment that the trial court exceeded its authority by enjoining defendant from refusing to sign a permit application for the removal of gravel. In defendant's view, "reasonably necessary" action under the easement does not encompass requiring him to affirmatively assist EWEB. But the record on summary judgment includes declarations by Tim O'Dell, EWEB's Right of Way Agent, and Zinniker, that defendant has filed several objections with regulatory authorities complaining that EWEB's activities are not authorized by the easement, and has refused to respond to a request to sign a permit application required by the Oregon Department of State Lands and Army Corps of Engineers to authorize work on the channel. If defendant's signature on a permit authorizing EWEB's activities is reasonably necessary to allow EWEB to conduct reasonably necessary activities on the easement, then the signing of a permit application is, in *729 fact, within the scope of the easement and within the scope of defendant's obligation not to obstruct the easement.[2]
Additionally, under the Uniform Declaratory Judgments Act, ORS 28.010 to 28.160, the court had authority to award supplemental relief "whenever necessary or proper." ORS 28.080. Defendant's refusal to sign a permit application for the removal of gravel was the conduct that led EWEB to bring this declaratory judgment action. We agree with EWEB that the court had authority to issue injunctive relief by directing that defendant not interfere with EWEB's conduct reasonably necessary to carry out the purpose of the easement, including the signing of an application necessary for the removal of gravel. See Morgan v. Sisters School Dist. # 6 , 353 Or. 189, 200, 301 P.3d 419 (2013) ("[I]n cases involving a recurring action, a declaration of the lawfulness of that action can have a practical effect in establishing the basis for further relief, such as an injunction[.]").
The judgment entered by the trial court declares that EWEB has the right under the easement "to maintain sufficient water flow to continue to attract fish " into the channel. Defendant points out in his second assignment that the easement refers explicitly only to salmon . He contends that the judgment exceeds the scope of the easement by permitting work on the channel for fish species other than salmon.
The record on summary judgment includes documentation that, although Chinook salmon are the primary users of the channel, EWEB's current license with FERC also requires protection of other endangered migrating fish species within the project area. Despite FERC requirements, defendant contends that he cannot be forced to allow activity for the protection of fish species not specifically mentioned in the easement.
*730 In determining the scope of an easement, the court's fundamental task is to discern the nature and scope of the easement's purpose and to give effect to that purpose in *462 a practical manner. Bernards et ux. v. Link and Haynes , 199 Or. 579, 592, 248 P.2d 341 (1952), on reh'g , 199 Or. 579, 263 P.2d 794 (1953) (holder of express right-of-way was entitled to improve the right-of-way to accommodate a change in use from a railroad to a logging road). The terms of an unambiguous easement will generally define its intended purpose. Watson v. Banducci , 158 Or. App. 223, 230, 973 P.2d 395 (1999) (citing Tipperman v. Tsiatsos , 327 Or. 539, 544-45, 964 P.2d 1015 (1998) ). That said, in giving effect to an easement's purpose, general principles of reasonableness control, Watson , 158 Or. App. at 231, 973 P.2d 395, and the parties' use of an easement is not necessarily limited to uses stated in the easement. See, e.g. , Bernards , 199 Or. at 592-93, 263 P.2d 794 (holder of express right-of-way was entitled to improve the right-of-way to accommodate a change in use from a railroad to a logging road). As the Supreme Court said in Jones v. Edwards , 219 Or. 429, 433, 347 P.2d 846 (1959) :
"Unless the language of the creating instrument or the attendant circumstances at the time of the grant indicate a contrary intent the scope of an easement is not limited to the uses contemplated to be made at the time of or immediately after its creation, either with respect to the permissible uses of the easement or with respect to the permissible uses which may be made of the servient land by the servient owner. In the absence of a contrary intent both the uses of the dominant and servient owners are subject to adjustment consistent with the normal development of their respective lands."
See also Tipperman v. Tsiatsos , 140 Or. App. 282, 290, 915 P.2d 446 (1996), modified in part on other grounds , 327 Or. 539, 964 P.2d 1015 (1998) (limiting access to burdened estate for cattle grazing to accommodate changing ecological conditions).
Here, there is no change in the "use" of the easement, per se . Rather, defendant complains that the term "fish" in the judgment allows EWEB to use the easement for a purpose different from that expressed in the easement-the passage of "salmon"-and that there is evidence *731 in the record on summary judgment that the intensity of use for the passage of "fish" exceeds that which is necessary for salmon. As a preliminary matter, we reject defendant's suggestion that the purpose of the easement was the protection of salmon and that its use is therefore limited to the protection of salmon. Rather, the easement's purpose was to comply with the requirements of the state Fish Commission, which required the erection of a "salmon fish rack or barrier" to prevent salmon from migrating up the tail race to force them to swim through the channel to connect back to the McKenzie River. Additionally, although the easement refers to activities necessary for the passage of "salmon," contrary to defendant's contention, it does not express an intention to limit use of the "salmon fish rack or barrier" to "salmon" or to exclude other fish species from the channel. Indeed, at the time the easement was created, the definition of "salmon" encompassed several fish species. Webster's Third New International Dictionary 2004 (unabridged ed. 1966) defined "salmon" as "any of various *** anadromous fishes of the family Salmonidae; esp : a fish of the genus Oncorhynchus that lives in and breeds in rivers tributary to the northern Pacific-often used with a qualifying term; see DOG SALMON, KING SALMON, HUMPBACK SALMON, SILVER SALMON, SOCKEYE[.]" (Capitalization in original.) Defendant notes that ORS 506.016 (1967)[3] defined "salmon" to include
"all anadromous species of salmon and trout, including but not limited to:
"(1) Oncorhynchus gorbusch, commonly known as humpback, humpies or pink salmon.
"(2) Oncorhynchus keta, commonly known as chum or dog salmon.
"(3) Oncorynchus kisutch, commonly known as coho or silver salmon.
"(4) Oncorhynchus nerka, commonly known as sock-eye, red or blueback salmon.
*463 *732 "(5) Oncorhynchus tschawytacha, commonly known as chinook salmon.
"(6) Salm gairdneri, commonly known as steelhead trout."
The record on summary judgment includes evidence that Chinook salmon are the primary users of the channel, and that the only other protected fish species that might be seen in the area of the channel also fall within the pertinent definitions of "salmon." In light of that record, the judgment's use of the term "fish" does not appear to represent a change in the purpose of the easement.
We also reject defendant's contention that the record on summary judgment shows that use of the easement for the passage of "fish" will intensify the use of the easement in a manner that is inconsistent with the terms of the easement or increase the burden on the servient estate. Defendant asserts that the EWEB's proposed excavation of 2,000 cubic yards of gravel exceeds past uses and supports a finding that the use for the passage of "fish" is more intense than the use for passage of "salmon." However, defendant relies on speculation; there is no evidence in the record on summary judgment linking the requested gravel removal to the passage of "fish," as opposed to salmon, or that the passage of "fish" requires any different or more intensive use of the easement than "salmon." Generally, the nonmoving party in a summary judgment motion has the burden of offering admissible evidence to create a genuine issue of material fact on any issue raised in the motion as to which the nonmoving party would have the burden of persuasion at trial. ORCP 47 C; O'Dee v. Tri-County Metropolitan Trans. Dist. , 212 Or. App. 456, 463, 157 P.3d 1272 (2007). In an action to establish rights under an express easement, the party bringing the action bears the burden to establish the existence of the easement. Dressler v. Isaacs , 217 Or. 586, 343 P.2d 714 (1959). But the burden to establish that a proposed use of the easement is not within the scope or purpose of the easement falls on the party seeking to establish that affirmative fact. See D'Abbracci , 201 Or. App. at 122, 117 P.3d 1032 (placing burden of proof on party asserting unreasonable interference with easement);
*733 House v. Hager , 130 Or. App. 646, 653, 883 P.2d 261, rev. den. , 320 Or. 492, 887 P.2d 793 (1994) (new use of prescriptive easement by dominant estate upheld in the absence of evidence that proposed new use imposes a new burden on the servient estate); see OEC 305 (placing on a party the burden of persuasion "as to each fact the existence or nonexistence of which the law declares essential to the claim for relief or defense the party is asserting"); OEC 307(1) ("The burden of producing evidence as to a particular issue is on the party against whom a finding on the issue would be required in the absence of further evidence."). Thus, in an ordinary action to establish rights under an easement, defendant would bear the burden of persuasion and the production of evidence to establish a genuine issue of material fact as to whether EWEB's use is reasonably necessary.
In a declaratory judgment action of this nature, in which EWEB seeks to establish its rights under an express easement, the parties bear the same burden of production and persuasion that they would have in an ordinary action to enforce rights under an easement. ZRZ Realty v. Beneficial Fire and Casualty Ins. , 349 Or. 117, 136, 241 P.3d 710 (2010) (when the party that ordinarily would have the burden of proof on a claim or defense brings a declaratory judgment action to establish its claim or defense, the plaintiff has the same burden of production and persuasion it ordinarily would have); First National Bank v. Malady , 242 Or. 353, 357, 408 P.2d 724 (1965) (the general rule that the moving party must bear the burden of proving the prima facie elements of his claim are also applicable in the vast majority of declaratory actions). The existence of the easement in this case is undisputed. Thus, if defendant asserts that EWEB's use presents an unreasonable burden on the servient estate, it is defendant's burden to put on evidence that gives rise to a genuine issue of material fact, precluding summary judgment. In the absence of evidence in the record on summary judgment that activities to encourage the passage of fish species other than "salmon" will unreasonably burden the servient estate, thereby creating a genuine issue of material fact, we conclude that the use of the term *464 "fish" in the judgment is not inconsistent with the easement. *734 Finally, we reject defendant's contention in his third assignment that the judgment exceeds the scope of the justiciable controversy, which defendant asserts is limited to the issue whether EWEB can excavate 2,000 cubic yards of gravel. Defendant's pleadings acknowledge, and we conclude, that a justiciable controversy exists "with respect to the proper scope of the Easement and EWEB's rights thereunder." The judgment is limited to those issues.
Affirmed.

We note that, apart from its single reference to "reasonable discretion" in carrying out its responsibility to excavate, construct, or reconstruct the channel, the judgment throughout refers to uses that are "reasonably necessary" to maintain sufficient water flow. For example, the judgment provides that EWEB may "[c]onduct such other removal and relocation of gravel or other river material *** as is reasonably necessary to maintain sufficient water flow[.]" It provides that EWEB may "[m]odify or reconstruct *** roadways *** as reasonably necessary[.]"

As we understand it, the effect of the court's order is simply to require defendant to sign EWEB's permit application in his capacity as landowner to grant approval for the work. We do not understand either the signature requirement or the order to require defendant to apply for or otherwise assume the responsibilities of a permittee. In other words, our decision should not be construed as a holding that defendant's obligation not to obstruct EWEB's easement extends to defendant, himself, becoming a permit holder with the Department of State Lands and the Army Corps of Engineers. That is a question we do not address.

The statute was amended in 1969 to eliminate subsection (6). Or. Laws 1969, ch. 411, § 1. It otherwise remains the same.